ORIGINAL

FLORENCE T. NAKAKUNI  #2286
United States Attorney
District of Hawaii

CHRIS A. THOMAS  #3514
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:     Chris.Thomas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

SEALED BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
OCT 0 6 2016
at __1__ o'clock and __46__ min. __P__M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | MAG. NO. 16-1222 BMK |
|---|---|---|
| Plaintiff, | ) | CRIMINAL COMPLAINT |
| vs. | ) | |
| THEODORE MARK BONILLA, (1) ERIC MAPA, (2) | ) | |
| Defendants. | ) | |

CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

On or about October 5, 2016, in the District of Hawaii, Defendants **THEODORE MARK BONILLA and ERIC MAPA** did knowingly and intentionally possess, with intent to distribute, 50 grams or more of methamphetamine, its salts, isomers and salts of its

isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

I further state that I am a Special Agent of the Drug Enforcement Administration and that this Complaint is based upon the facts set forth in the attached "Affidavit in Support of Criminal Complaint", which is incorporated herein by reference.

DATED: HONOLULU, HAWAII: October 6, 2016.

MATTHEW RUMSCHLAG
Special Agent, DEA

Sworn to and subscribed in my presence, this 6th day of October, 2016.

Honorable KENNETH J. MANSFIELD
UNITED STATES MAGISTRATE JUDGE

2

## AFFIDAVIT OF MATTHEW RUMSCHLAG

MATTHEW RUMSCHLAG, after being duly sworn, deposes and says as follows:

1. I have been a Special Agent of the DEA for over 12 years and am currently assigned to the Honolulu High Intensity Drug Trafficking Areas (HIDTA) Task Force comprised of DEA Agents, Honolulu Police Department personnel and State of Hawaii Department of Public Safety, Sheriff's Division personnel, of the Honolulu District Office in Honolulu, Hawaii. Our principal responsibility is to investigate narcotics trafficking and distribution in Hawaii and elsewhere. I have participated in investigations of offenses enumerated in Section 2516 of Title 18, United States Code, that is (a) the distribution and possession with intent to distribute controlled substances, and the use of wire facilities to facilitate the same, (b) money laundering, (c) conspiracy to do the foregoing and (e) aiding and abetting these offenses, all in violation of Title 21, United States Code, Sections 841, 843, and 846 and Title 18, United States Code, Sections 2, 1956 and 1957.

2. During my tenure with the DEA, I have participated in numerous investigations where I have: (a) conducted physical and wire surveillance; (b) executed search warrants; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers and money launderers; (d) debriefed cooperating drug traffickers and money launderers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking, money laundering, and other violations of federal law. Through my training, education, and experience, I have become familiar with: (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

3. During this time, I have become knowledgeable with the enforcement of State and Federal laws pertaining to narcotics and dangerous drugs. Based on this experience, I have become well versed in the methodology utilized in narcotics trafficking operations, the specific types of language used by narcotic traffickers, the unique trafficking patterns employed by narcotics organizations and their patterns of drug abuse.

4. On October 4, 2016, a proffer interview was conducted with a Cooperating Source ("CS-1"). CS-1 is cooperating on behalf of an individual who is pending future federal narcotic charges, in violation of Title 21 USC §841. CS-1 is cooperating with the government with the hope of providing a benefit for the other individual of a reduced sentence. No promises by the government have been made to CS-1 with regard to his/her cooperation. The information provided by CS-1 has been corroborated by information known to the law enforcement officers, information obtained from other confidential sources and physical surveillance. CS-1's information has never been found to be false or misleading and has therefore proven to be reliable.

5. On October 5, 2016, under the direction of law enforcement, CS-1 met with Defendants Theodore Mark BONILLA ("BONILLA") and Eric MAPA ("MAPA") at BONILLA's residence of 746 Kamoku Street, Apartment B, Honolulu, HI, to conduct a controlled purchase of one (1) pound of crystal methamphetamine for $9,000.00. Upon arriving at BONILLA's residence, CS-1 informed BONILLA that he/she only had enough monies to purchase a half (1/2) pound of crystal methamphetamine. At that time, CS-1 provided pre-recorded funds to BONILLA and BONILLA verified the count of the pre-recorded funds to be $4,500.00. Shortly after verifying that the pre-recorded funds totaled $4,500.00, law enforcement observed MAPA exit BONILLA's residence and approach a dark colored Chevy truck that was parked near BONILLA's residence. Law enforcement then observed MAPA walk back to BONILLA's residence appearing to conceal something in his hand, underneath his hat. Upon reaching BONILLA's residence, law enforcement observed MAPA enter BONILLA's residence. Once inside the residence, MAPA gave BONILLA approximately a half (1/2) pound of crystal methamphetamine who proceed to weigh the half (1/2) pound to verify the weight of the crystal methamphetamine. After weighing the crystal methamphetamine, BONILLA then provided the half (1/2) pound to CS-1. Law enforcement then observed MAPA depart BONILLA's residence. Shortly thereafter, law enforcement observed CS-1 departed BONILLA's residence as well.

6. After verifying that CS-1 in fact purchased the half (1/2) pound of crystal methamphetamine, law enforcement conducted a traffic stop of MAPA's vehicle near the intersection of McCully and Beretania Street in Honolulu, HI. At the same

2

time, law enforcement executed a federal search warrant, filed under Case No. 16-1209 BMK, authorized by the Honorable Magistrate Judge Kenneth J. Mansfield, District of Hawaii, at BONILLA's residence. Subsequent to the traffic stop of MAPA and the execution of the federal search warrant, MAPA and BONILLA were arrested and transported to the DEA Honolulu District Office (HDO).

7. During the above stated actions, law enforcement seized the suspected half (1/2) pound of crystal methamphetamine from CS-1. Law enforcement also searched CS-1 for any illegal contraband with negative results. Subsequently, law enforcement submitted the suspected half (1/2) pound of crystal methamphetamine under HPD case number 16-396357 to the HPD Scientific Investigative Section (SIS) for analysis and safekeeping. Prior to this submission, the crystal methamphetamine was field tested, testing positive for the presence of methamphetamine.

8. At the DEA HDO, BONILLA was advised of his Mirada Rights and agreed to provide a statement to law enforcement. BONILLA stated that after being notified that CS-1 wanted to purchase one (1) pound of crystal methamphetamine, BONILLA contacted MAPA to complete the one (1) pound transaction. BONILLA stated that sometime thereafter, MAPA arrived at BONILLA's residence. BONILLA further stated that subsequently, CS-1 arrived at his residence. Upon arriving at BONILLA's residence, BONILLA stated that CS-1 informed him that CS-1 only had enough purchase money to purchase half (1/2) pound of crystal methamphetamine. BONILLA stated that he then counted the money and verified that all the purchase money was there. BONILLA stated that he then gave the money to MAPA who exited his residence. BONILLA understood that when MAPA exited his residence that MAPA was going to pick up the half (1/2) pound of crystal methamphetamine. BONILLA stated that MAPA had done the same thing during previous narcotic purchases. BONILLA stated that MAPA eventually returned back inside his residence and was carrying approximately a half (1/2) pound of crystal methamphetamine in his hands, concealed underneath a hat. BONILLA stated that he then took the half (1/2) pound and weighed it to verify the weight. BONILLA stated that after weighing the crystal methamphetamine, he "pinched" some of the crystal methamphetamine for his own personal stash. BONILLA stated that he then gave CS-1 the half (1/2) pound of crystal

3

methamphetamine.  BONILLA stated that MAPA and CS-1 then both departed BONILLA's residence.

9.  At the DEA HDO, MAPA was advised of his Mirada Rights and agreed to provide a statement to law enforcement.  MAPA stated that BONILLA had contacted him and placed an order for one (1) pound of crystal methamphetamine.  MAPA stated that he then drove to BONILLA's residence where he met with BONILLA. MAPA stated that while at BONILLA's residence, BONILLA's friend (CS-1) arrived at the residence and informed MAPA and BONILLA that CS-1 only had enough purchase money for a half (1/2) pound of crystal methamphetamine.  MAPA stated that after he verified with BONILLA that all the money was present to purchase the half (1/2) pound, MAPA made contact with his friend who was to deliver the crystal methamphetamine.  MAPA stated that once his friend arrived at BONILLA's residence, MAPA took the purchase money and exited BONILLA's residence and met with his friend. MAPA stated that he provided his friend the purchase money and received a half pound of crystal methamphetamine from his friend.  MAPA stated that prior to providing the purchase money to his friend, MAPA took out $500.00 for his profit for completing the half (1/2) pound purchase.  MAPA stated that he then returned back into BONILLA's residence with the half (1/2) pound of crystal methamphetamine where MAPA couldn't remember who he provided it to.  MAPA stated that shortly thereafter he departed BONILLA's residence and was subsequently stopped and arrested by law enforcement.

//

//

//

//

//

//

//

//

4

10. Methamphetamine is a Schedule II controlled substance.

FURTHER AFFIANT SAYETH NAUGHT.

MATTHEW RUMSCHLAG
Special Agent, DEA

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendants above-named committed the charged crime found to exist by the undersigned Judicial Officer at 1:32 am/pm on October 6th, 2016.

Subscribed and Sworn to Before Me
this 6th Day of October, 2016.

Honorable KENNETH J. MANSFIELD
U.S. Magistrate Judge
District of Hawaii